**Andrew MYCAK, Plaintiff–Appellant,**

v.

**HONEYWELL, INC. and Honeywell Federal Systems, Inc., Defendants–Appellees.**

**No. 1713, Docket 91–7275.**

United States Court of Appeals, Second Circuit.

Argued June 24, 1991.

Decided Jan. 14, 1992.

MAHONEY, Circuit Judge:

Plaintiff-appellant Andrew Mycak appeals from a summary judgment entered January 31, 1991 in the United States District Court for the Southern District of New York, John S. Martin, Jr., Judge, that dismissed his complaint against defendants-appellees Honeywell, Inc. ("Honeywell") and Honeywell Federal Systems, Inc. ("HFS"). The district court held that Honeywell and HFS did not breach the provisions of an employee handbook that constituted an employment contract with Mycak.

We affirm.

## Background

Honeywell hired Mycak in June 1969 as a computer service technician with the title of field engineering representative in its field engineering division in New York City. At that time, Mycak signed an agreement which provided in part that his employment was "in accordance with any applicable written agreement and applicable personnel practices published to employees and subject to any such agreement or such personnel practices, may be terminated by [Mycak] or by Honeywell at any time."

Mycak was also given a copy of a Honeywell employee handbook then in effect for its field engineering division (the "Handbook"). The Handbook was updated in 1975 and 1981. It contained a job security policy that provided specific procedures to be followed if a work force reduction should become necessary. That policy in pertinent part, as stated in the 1981 Handbook, is set forth in the margin.[1]

Martin N. Silberman, New York City (Silberman & Rhine, New York City, of counsel), for plaintiff-appellant.

Marvin O. Granath, Minneapolis, Minn. (Thomas R. Kelly, Epstein Becker & Green, P.C., New York City, of counsel), for defendants-appellees.

Before CARDAMONE, MINER, and MAHONEY, Circuit Judges.

1. Should it become necessary to declare surplus the job of a full-time permanent employee, surplus will be determined within position groups within the affected work group. Affected employees will have the following options provided they have the ability to perform the available work, in the order listed:

   a. Fill an opening at an equal grade level within the work group.
   Fill an opening at an equal grade level within the region.
   Fill an opening at an equal grade level within the operation.
   Fill an opening at an equal grade level nationally.
   b. If the only available openings involve relocation, a surplus employee may displace, within the work group, the least senior employee of equal or lower grade level to whom one is senior within one's position group.
   c. Fill an opening in the next lower position group within the work group.
   d. Displace the least senior employee to whom one is senior, in the next lower position group, within one's work group.
   e. Procedures c) and d) above are repeated through each succeedingly lower position group until the employee is able to fill a position.
   f. Fill a lower grade level opening within fifty miles of the surplus employee's work location.

The 1975 Handbook provided in two sections that it "governed" the employer-employee relationship, but the 1981 Handbook (or at least those portions of it included in the record by the parties) did not repeat that statement. The 1981 Handbook does state that it "defines and interprets Honeywell's relationships with the field engineering representatives in the Field Engineering organization," but adds that it "is not an all-inclusive source of Honeywell information and is not intended to be a complete policy manual," and further provides: "While the stated policies will be applied to the extent possible, in the final analysis, specific judgment and discretion will govern." Mycak was aware of the existence and provisions of the Handbook at all times during his employment by Honeywell and HFS.

In 1986, Honeywell sold most of its computer business to a French firm and subsequently formed a new, wholly owned subsidiary, HFS, by which Mycak was thereafter employed. It appears to be undisputed that the Handbook continued in effect as to HFS employees. While employed by HFS, Mycak worked primarily at Metropolitan Life Insurance Company, servicing computer equipment known as "level 6" or "level 716." Mycak also worked at other customer locations in New York City on the same types of equipment. Mycak's work responsibilities did not change significantly as a result of his transfer to HFS.

In 1988, however, Mycak's workload lessened because the French firm began to assign its own employees to work previously performed by Mycak. In late 1988, Jack McGrath, Mycak's supervisor, told Mycak that HFS was running out of work for him. On January 17, 1989, Mycak met with Paul Lea, a regional director of HFS, and Leo Moore, its personnel manager, who advised Mycak that they were trying to arrange a position for him in the New York metropolitan area with the French company that had acquired Honeywell's computer business, but would probably not succeed in doing so. Hence, they offered Mycak a position with HFS in Washington, D.C., which he declined, stating a strong preference to remain in the metropolitan New York area.

The HFS representatives then told Mycak, and reiterated in a memorandum from Lea to Mycak dated January 26, 1989, that because of his expressed unwillingness to transfer from the metropolitan New York area and their inability to find work for him there, he would probably be discharged.

There was also some discussion at the January 17, 1989 meeting, and in a prior conversation between Mycak and McGrath, concerning a possible position for Mycak with HFS at Bayonne, New Jersey. In a memorandum dated February 22, 1989 that responded to Lea's memorandum dated January 26, 1989, Mycak stated that: "My preference is to remain in New York City as [an employee of the French company], but I would consider a move to Bayonne, NJ if that was necessary." The anticipated position in Bayonne, however, did not materialize. Prior to his layoff, Mycak was offered positions with HFS in Texas and Italy, which he also rejected.

The job security policy in the 1981 Handbook did not require Mycak to accept relocation. *See supra* note 1. Rather, because the only available opening at an equal grade level involved relocation, Mycak was entitled to "displace, within the work group, the least senior employee of equal or lower grade level to whom [he was] senior within [his] position group." *See id.* It is uncontested that the pertinent "work group" was the Honeywell/HFS "New England District[,]" which comprised the state of New York, four New England states, eastern Pennsylvania and northern New Jersey." The pertinent "position group" was field engineering representative (at some point retitled "customer service engineer 2"), of which there were seventeen in the New England District when HFS was first organized.

Mycak testified in deposition that he had attempted to displace Lance Weber, an HFS employee in Bayonne, "[b]ecause it would be less inconvenient for me to go to Bayonne than to go to Pennsylvania," where he would have been entitled to displace the least senior employee within his position group pursuant to the Handbook

policy. Further, Mycak did not contest, and thereby conceded, the statement in defendants-appellees' Rule 3(g) statement that Mycak declined to seek the Philadelphia position. *See* S.D.N.Y.Civ.R. 3(g).

Mycak also testified in deposition that he checked daily, via computer, the names and seniority status (determined by sequential numbers assigned at the inception of employment) of the employees in the New England District in his position group, and that he was aware, as a result of that practice, that he was not authorized to displace Weber. In fact, there were ten employees in Mycak's position group within the New England District who were junior to Mycak, at least seven of whom were junior to Weber. No claim is made that Mycak ever pursued an opening in a lower position group, or at a lower grade level, pursuant to the Handbook job security policy. *See supra* note 1.

On March 3, 1989, Mycak received a formal work force reduction notice stating that he was laid off effective April 7, 1989. Mycak thereafter brought this action in the Supreme Court of the State of New York. Honeywell and HFS removed the case to the United States District Court for the Southern District of New York on the basis of diversity of citizenship, and thereafter moved for summary judgment.

Ruling on that motion, the district court found that HFS was contractually bound by the Handbook, but held that Honeywell and HFS had not breached the contractual policies. The court determined that Mycak had the burden of exercising the Handbook options, and did not properly do so. The court stated that "[t]he provisions upon which [Mycak] relies, by their very terms, are options which, in order to become effective, had to be exercised by the employee." Noting Mycak's "misplaced focus on the Weber position," the district court ruled that Mycak had failed "to exercise the job security options that the Handbook made available to [him]," and granted summary judgment to Honeywell and HFS.

This appeal followed.

### Discussion

We review the district court's grant of summary judgment *de novo*, examining the evidence and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *Prunier v. City of Watertown*, 936 F.2d 677, 679 (2d Cir.1991). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment, a party must present evidence to show "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Measuring by this standard, we address the issues raised by this appeal: (1) whether the Handbook has contractual force between the parties; (2) if so, whether Honeywell and HFS breached the resulting contract; and (3) whether the issue of their good faith may be considered on this appeal, and if so, how that issue should be resolved.

### A. *Employee Handbook as Employment Contract.*

The parties agree that New York law governs this diversity case. "It is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920, 514 N.Y.S.2d 209, 211 (1987) (citation omitted). This rule does not apply, however, when the employer has promulgated policies in a personnel manual specifying procedures or grounds for termination. These procedures become a part of the employment contract and must be followed. *See Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 465–67, 443 N.E.2d 441, 445–46, 457 N.Y.S.2d 193, 197–98 (1982); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851–53 (2d Cir.1985).

We agree with the district court's ruling that the job security policy stated in

the Handbook contractually bound HFS, and reject the contention of Honeywell and HFS that its provisions amount only to nonbinding "general statements of policy and supervisory guidelines." Rather, the policy sets forth a very specific and detailed procedure for work force reduction in mandatory and unqualified terms. Another provision of the policy, requiring the payment of one week's severance pay for each year an employee had worked for Honeywell or HFS, was explicitly invoked and followed in Mycak's case. Thus, the policy imposed an "express limitation" upon HFS's right to discharge Mycak. *See Gorrill*, 761 F.2d at 852. We also agree with the district court's conclusion that the Handbook's language of qualification ("in the final analysis, specific judgment and discretion will govern") had a counterpart in *Weiner* ("However, if the welfare of the company indicates that dismissal is necessary, then that decision is arrived at and is carried out forthrightly."), *see Weiner*, 57 N.Y.2d at 460–61, 443 N.E.2d at 442, 457 N.Y.S.2d at 194, and therefore does not negate the binding force of the Handbook's more specific provisions under New York law.

### B. *The Asserted Breach by Honeywell and HFS of the Handbook Provisions.*

In an action involving the construction of a contract, summary judgment is proper only when the contract is " 'wholly unambiguous.' " *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir.1990) (citing *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989)).

The mere assertion of an ambiguity, however, does not preclude summary judgment. The nonmoving party must show that the contractual language is " 'susceptible of at least two fairly reasonable mean-

ings.' " *Wards Co.*, 761 F.2d at 120 (quoting *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983)).

Mycak argues that because the job security policy was ambiguous, its interpretation was a factual issue precluding the grant of summary judgment. The alleged ambiguity concerns which party had the burden of identifying the employee that Mycak was entitled to displace. The district court held that the Handbook was unambiguous—that the term "options" indicated that the employee had the duty to exercise his rights and effectuate the job security provisions.

The job security policy gives several "options" to employees whose jobs are declared surplus, "provided they have the ability to perform the available work." *See supra* note 1. Under section (a) of the policy, Mycak had the option of filling any available job opening in the HFS organization. Mycak had no knowledge of job openings throughout the HFS organization, so HFS brought them to his attention by offering him jobs in Washington, D.C., Texas, and Italy. Mycak rejected these openings because they involved relocation, as was his right under the Handbook policy.

Under section (b) of the policy, Mycak was entitled to displace the least senior employee within his position group and work group. This meant that Mycak could replace the least senior of seventeen field engineering representatives in HFS's New England District, consisting of the state of New York, four New England states, eastern Pennsylvania, and northern New Jersey. Mycak testified in deposition that he kept daily track of these employees and positions, and could determine the employees' relative seniority by the employee numbers assigned to them by Honeywell or HFS at the inception of their employment.

Mycak further testified that he attempted to displace Lance Weber in Bayonne, New Jersey, although aware that Weber was not the least senior field engineer representative in the New England district. Mycak admittedly made this attempt "[b]ecause it would be less inconvenient for me to go to Bayonne than to go to Pennsylva-

nia," where (in Philadelphia) the least senior field engineering representative, the *only* one Mycak was entitled to displace under the Handbook policy, was located. Mycak concedes his adversaries' Rule 3(g) statement, consistent with his testimony, that he declined to seek the Philadelphia position. Finally, there is no evidence that Mycak ever expressed any interest in pursuing employment by HFS in a lower position group, or at a lower grade level, pursuant to sections (c) through (f) of the Handbook policy, or that any such positions were available.

This record is barren of any showing that the Handbook policy was unclear, or that HFS failed to provide information to Mycak that he needed for the intelligent assessment and exercise of the options provided to him by the Handbook policy. Rather, there is a convincing demonstration, based upon Mycak's own testimony, that Mycak was well aware of the only option available to him for a position as a field engineering representative, and declined to exercise that option because of his strong personal preference to remain in the metropolitan New York area. He was certainly entitled to that preference, but it provides no basis to charge Honeywell or HFS with a breach of his employment contract as embodied in the Handbook job security policy.

### C. *Honeywell's and HFS' Asserted Bad Faith.*

■ Invoking *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir.1989), a case in which we reversed a summary judgment in favor of an employer and stated that "[w]hether the employer acted in good faith at the time when the employment relationship was ended here presents a question of fact," *id.* at 1196, Mycak seeks a similar finding and reversal on this appeal. He concedes that the issue was not presented to the district court.

■ A party seeking to overturn the decision of a trial court may not ordinarily obtain review of an issue not raised below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Thomas E. Hoar, Inc. v. Sara Lee Corp.,*

900 F.2d 522, 527 (2d Cir.) (" 'While this bar to raising new issues on appeal is not absolute, it may be overcome only when necessary to avoid manifest injustice.' ") (quoting *Schmidt v. Polish People's Republic,* 742 F.2d 67, 70 (2d Cir.1984) (citation omitted)), *cert. denied,* —— U.S. ——, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). This rule is " 'essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues.' " *Singleton,* 428 U.S. at 120, 96 S.Ct. at 2877 (quoting *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)).

It is inappropriate to consider this issue for the first time on appeal, and no need "to avoid manifest injustice" is presented. In any event, we discern no evidence of any bad faith on the part of Honeywell and HFS in dealing with Mycak's termination.

### Conclusion

The judgment of the district court is affirmed.