**Patricia A. BARTZ, Plaintiff,**

v.

**AGWAY, INC., Defendant.**

**No. 91–CV–1050.**

United States District Court, N.D. New York.

April 21, 1994.

Office of Eric M. Alderman, Syracuse, N.Y., for plaintiff; Eric Alderman, of counsel.

Hiscock & Barclay, Syracuse, N.Y., for defendant; Eric Charlton, of counsel.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

Presently before the court is a motion by the plaintiff pursuant to Federal Rules of Civil Procedure 59(a) and 59(e), to amend and alter the Summary Judgment Order issued by this court on September 16, 1993, which dismissed the plaintiff's cause of action based upon an alleged breach of employment contract.

■ There are generally only three circumstances under which a court will agree to reconsider a prior decision. To successfully prevail, the moving party must show the existence of: (1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice. *Wilson v. Consolidated Rail Corp.*, 815 F.Supp. 585 (N.D.N.Y.1993) (citing cases); *see McLaughlin v. New York, Governor's Office of Employee Relations*, 784 F.Supp. 961, 965 (N.D.N.Y.1992).

In the case at bar, the plaintiff challenges the Court's Order of September 16, 1993, on the basis that new evidence was adduced at trial which was not available at the time of the summary judgment motion. More specifically, the plaintiff avers that the testimony of Marketing Manager Dave McDougal stating that he was unaware of the Revised Displaced Employee Policy when he interviewed Mrs. Bartz, unequivocally demonstrates that an implied employment contract existed between Agway and the plaintiff and that this implied employment contract was breached by Agway when it terminated the plaintiff.

■ It is settled law in New York that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party for any reason or no reason. *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 801 (2d Cir.1992), *citing Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (N.Y. 1987) (citation omitted). Under this rule, limitations on the right of an employer to discharge an at-will employee have been narrowly construed by the courts of New York. Specifically, the New York Court of Appeals has held that "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 89 (N.Y.1983). Plaintiff recognizes that because her employment was for an unspecified dura-

tion that she is presumed to have been an employee at will. However, plaintiff cites *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852–53 (2d Cir.1985), in support of her position that she had an employment contract stemming from Agway's Displaced Employee Policy that limited defendant's right to terminate her employment at will.

In *Gorrill*, the Second Circuit held that a contractual commitment could be implied from a defendant's operations manual where the manual specifically stated that seniority would be the *sole* factor in terminations stemming from a reduction in force. The keystone of the Second Circuit's decision in *Gorrill* was the specificity with which the defendant's policy was articulated in its handbook. The operations manual of the defendant in *Gorrill* stated:

> [s]enority shall be the sole factor for determining demotions, transfers or terminations caused by job elimination or force reduction when a senior employee is qualified to perform the available work or can be adequately trained in a reasonable or practicable period of time.

*Gorrill* at 850.

From this language, and evidence that the defendant gave the plaintiff repeated oral and written assurances that the operations manual contained the terms and conditions of employment and was controlling, the Second Circuit discerned an "express limitation" on the defendant's right to terminate at will.

Additionally, in the recent case *Mycak v. Honeywell, Inc.*, 953 F.2d 798 (2d Cir.1992), the Second Circuit held that a job security policy stated in an employer's handbook contractually bound the defendant and rejected the defendant's contention that the provisions amounted only to non-binding "general statements of policy and supervisory guidelines". Again, the linchpin of the Circuit's decision was that the defendant's policy set forth a very specific and detailed procedure for work force reduction in mandatory and unqualified terms. *Id.* at 802.

Based upon the logic articulated in these two decisions, plaintiff Bartz contends that a contractual obligation limiting the defendant's right to terminate could be inferred

from Agway's Displaced Employee Policy, an inter office memorandum, and through oral assurances given to her by Agway. In an Order dated September 16, 1993, this court rejected these assertions and granted summary judgment to the defendant on this claim. After reviewing all of the evidence and arguments presented by both parties, this court feels its decision to dismiss the breach of contract claim was proper given the totality of the circumstances.

Support for this conclusion lies in a close analysis of Agway's Displaced Employee Policy. The pertinent language of this policy states:

Agway will make *an attempt* to place employees who have been effected by work force reductions in available positions whenever possible.

This Displaced Employee Policy was revised in April 1990, via an inter office memorandum from Richard Schlote, to include *inter alia:*

Interviews will not be granted to regular employees until the qualified displaced employees have been interviewed and rejected.

Unlike the language articulated in the policies in *Gorrill* and *Mycak*, Agway's Displaced Employee Policy is not written in mandatory and unqualified terms. It simply articulates that as a general policy Agway will *attempt* to rehire displaced workers. In an effort to further this goal, Agway articulated a revised policy in which qualified displaced employees would be interviewed prior to interviewing regular employees.

It would be unreasonable to infer that such language guarantees the plaintiff a new position within the company or somehow grants the plaintiff a vested right in continued employment. To hold that such general and nonspecific language amounts to an "express limitation" on an employer's right to terminate at will would be counter to a long list of New York cases which have held that policies articulated in an employee handbook do not create such a limitation. *See, e.g., Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (N.Y.1987) (personnel manual did not constitute limitation by express agreement on employer's

right to terminate employee at will); *Paolucci v. Adult Retardates Center, Inc.,* 182 A.D.2d 681, 582 N.Y.S.2d 452 (2d Dep't 1992) (neither oral assurances made to at-will employee nor general provision in employee manual were sufficient to limit employer's right to discharge employee at any time, for any reason); *Rich v. Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429 (A.D. 4th Dep't 1993) (employee handbook was not contractual limitation upon employer's freedom to discharge employee); *Fiammetta v. St. Francis Hospital,* 168 A.D.2d 556, 562 N.Y.S.2d 777 (2d Dep't 1990) (limitation on the employer's right to terminate at-will employment will not be inferred solely from the existence of policy manuals or the existence of an internal grievance procedure).

Additional support for the court's conclusion can be found in the disclaimer that was printed on the title page of the employee handbook. This disclaimer states that no contract of employment is created by reason of the policies which follow and that neither the policies nor any oral agreements represent binding obligations on Agway. Furthermore, the plaintiff has failed to establish any evidence of detrimental reliance upon either the policy handbook or the inter-office memo. *See, Rizzo v. International Brotherhood of Teamsters, Local 237,* 109 A.D.2d 639, 486 N.Y.S.2d 220 (1st Dep't 1985) (employee at-will could not rely upon employer's manual as express limitations on employer's right to terminate her employment where plaintiff could not show detrimental reliance upon such materials).

In conclusion, when in reviewing the totality of the circumstances, this court finds that the trial testimony of Dave McDougal does not cure the defects in the plaintiff's claim which mandated the granting of summary judgment for the defendants. As such, the plaintiff's motions for a new trial and to amend the judgment are denied.

**IT IS SO ORDERED.**