**Richard C. DEMICCO, Plaintiff,**

v.

**HOME DEPOT USA, INC., Respondent.**

**No. CV 99–3192.**

United States District Court, E.D. New York.

June 23, 2000.

Edward K. Blodnick, Blodnick, Gordon, Blodnick & Zelin, Jericho, NY, for plaintiff.

Christopher P. Reynolds, Rochelle M. Noel, Douglas Noll, Morgan, Lewis & Bockius LLP, New York City, for defendant.

*MEMORANDUM AND ORDER*

WEXLER, District Judge.

In this breach of contract action brought pursuant to this court's diversity jurisdiction, Plaintiff Richard DeMicco ("Plaintiff" or "DeMicco"), alleges that he was wrongfully terminated from his position as a store manager for Defendant, Home Depot USA, Inc. ("Defendant" or "Home Depot").

Presently before the court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of the motion Defendant maintains that Plaintiff's association with Home Depot was at all times an "at-will" employment relationship, terminable at any time by either party, with or without cause. In opposition to the motion, Plaintiff contends that Defendant's Orientation Handbook (the "Handbook") created a contract between the parties which bound the Defendant to follow disciplinary procedures outlined in the Handbook, thus altering the at-will status of their relationship and limiting Defendant's right to terminate Plaintiff's employment.

At issue is whether the Plaintiff has alleged sufficient facts, under New York State law, to allow his breach of contract claim to proceed. For the reasons set forth below, the court holds that Plaintiff has set forth no facts to take this case outside of the well-settled at-will employment doctrine of New York law. Accordingly, Defendant's motion for summary judgment is granted.

*DISCUSSION*

I. *General Principles*

Summary judgment may be granted only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834

F.2d 54, 57 (2d Cir.1987). The burden is on the moving party to clearly establish the absence of a genuine issue as to any material fact, and the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Donahue,* 834 F.2d at 57.

## II. *At–Will Employment Doctrine*

■ Under New York State law, an employment relationship covering an indefinite period of time is deemed to be at-will, and as such is terminable at any time by either party, with or without cause. *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, (1987); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, (1983); *Gmora v. State Farm Mut. Auto. Ins. Co.,* 709 F.Supp. 337, 338 (E.D.N.Y.), *aff'd,* 888 F.2d 1376 (2d Cir.1989).[1]

■ Absent a written employment contract, the circumstances under which an employee's at-will status may be altered are narrowly drawn. *See Sabetay,* 514 N.Y.S.2d at 212, 506 N.E.2d 919. Both the Court of Appeals of New York and the Second Circuit, interpreting New York law, have found that language in an employment manual or handbook may, in certain instances, be relied upon to establish the existence of an agreement that limits an employer's right to terminate an employee.

For example, in *Weiner v. McGraw–Hill,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), the New York Court of Appeals held that language in a handbook and an employment application, along with other factors, was evidence of an express commitment not to terminate an employee

without cause. *Weiner,* 457 N.Y.S.2d at 197, 443 N.E.2d 441.

In *Sabetay,* the Court of Appeals made clear that factors present in *Weiner,* such as assurances made by the employer and reliance thereon, are delegated to a supporting role in a plaintiff's case. Such factors are relevant only to reinforce the finding of an express limitation based upon clear documentary language that creates an express contract limiting the right to terminate. *See Sabetay,* 514 N.Y.S.2d at 212, 506 N.E.2d 919.

Other cases finding a limitation on the right to terminate an at-will employee based upon company documents include *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir.1985). There, the Second Circuit held that language in an Operations Manual, providing that work-force reduction would be determined solely by employee seniority, amounted to an express limitation on an employer's right to terminate an employee. *Gorrill,* 761 F.2d at 850, 852. *See also Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801–02 (2d Cir.1992) (procedures for work-force reduction set forth in an employee handbook held to limit employer's rights to terminate employee).

■ As the aforementioned cases make clear, where plaintiff seeks to establish a contractual limitation on the right to terminate employment, he must "demonstrate a limitation by express agreement on his employer's unfettered right to terminate at will." *Sabetay,* 514 N.Y.S.2d at 213, 506 N.E.2d 919 (1987) (affirming dismissal of claim where plaintiff failed to demonstrate an express agreement to limit employer's right to terminate an at-will employee).

■ When deciding whether an express limitation exists, there is a distinction be-

---

1. State and Federal law place certain restrictions, not at issue here, on the at will employment doctrine. One such restriction prohibits the termination of an employee based upon race. *See Lauture v. International Business Machines Corp.,* 2000 WL 791769 (2d Cir. June 20, 2000) (at-will employee may pursue race discrimination claim pursuant to 42 U.S.C. § 1981); *see Murphy,* 461 N.Y.S.2d at 237, 448 N.E.2d 86 (recognizing "constitutionally impermissible purpose" or "statutory proscription" as limitation on right to terminate an at-will employee).

tween "nonbinding" general statements of policy and supervisory guidelines, and an express commitment in "mandatory and unqualified terms." *Mycak*, 953 F.2d at 802. In those cases finding an express limitation upon the right to terminate an at-will employee, the language relied upon has been clear and unambiguous.

In *Weiner*, for example, the limitation was found where the defendant's employee handbook provided for "dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed." *Weiner*, 457 N.Y.S.2d at 194, 443 N.E.2d 441.

Similarly, in *Gorrill* the operations manual stated that "seniority will be the sole factor for determining demotions, transfers or termination." *Gorrill*, 761 F.2d at 850. Finally, in *Mycak*, defendant's employment manual set forth "a very specific and detailed procedure for work force reduction in mandatory and unqualified terms." *Mycak*, 953 F.2d at 802.

In *Sabetay*, on the other hand, the documents relied upon were held only to "suggest standards" for "employees performance of their duties," and not to create an express contract. *Sabetay*, 514 N.Y.S.2d at 213, 506 N.E.2d 919.

### III. *The Present Motion*

■ Plaintiff here alleges that statements in the Handbook created a contract with Defendant. Specifically, Plaintiff alleges that the language of the Handbook binds the Defendant to provide first verbal and then written counseling prior to termination, except where an employee has violated one of twelve rules listed therein as justifying immediate termination, and that Plaintiff's termination in the absence of such counseling amounts to a material breach of contract. In support of this proposition, Plaintiff cites the following language from the Handbook:

Verbal Counseling—used to make associates aware of rule infractions and to

counsel associates on the improvement needed to meet performance standards. Written Counseling—serves to notify the associate of rule violation and warning for future misconduct, and an action plan for improving job performance. Termination—can occur immediately for serious misconduct such as violation of Rules 1 through 12. Termination also results when an associate fails to improve after verbal and/or written counseling.

In support of its motion for summary judgment, Defendant relies on documents provided to Plaintiff that state clearly that he was terminable at will. First, Defendant relies upon a form acknowledging receipt of the Handbook, which Plaintiff signed, stating that neither the Handbook nor any of its provisions was a contract. Second, Defendant refers to Plaintiff's signed employment application, which states that the employment will be for no definite term, and that the right to terminate employment at any time, with or without cause, is reserved to either party.

Third, Defendant notes that its employee stock incentive plan states that the plan confers no rights as to an employee's continuance of employment, and is not intended to interfere with the company's right to terminate a participant's employment at any time. Finally, Defendant relies upon Plaintiff's deposition testimony in which he recalls being told that he could be terminated at any time.

In light of the documents and testimony cited by Defendant, Plaintiff's interpretation of the Handbook to create an express contract is simply implausible. Indeed, a reading of the Handbook to find the listed "Rules 1 through 12," as exhaustive of the circumstances under which an employee may be immediately terminated, is precluded by the plain language of the Handbook. The use of the words "such as ... Rules 1 through 12," can be interpreted only as indicating that other violations, in addition to those listed, may also result in immediate termination. Plaintiff's argu-

ment, therefore, that the list of rules is exhaustive and establishes an express agreement requiring counseling prior to termination must fail.

This case is readily distinguishable from cases finding an express commitment to continued employment. Here, the Handbook lacks the mandatory and unqualified terms found in *Weiner*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, *Gorrill*, 761 F.2d 847, and *Mycak*, 953 F.2d 798. Instead, the facts here are analogous, for example, to those in *Marvin v. Kent Nursing Home*, 153 A.D.2d 553, 544 N.Y.S.2d 210 (2d Dep't 1989). There, the Second Department held that summary judgment was properly granted an employer where the manual at issue listed disciplinary procedures and grounds for discipline, but did "not state that termination is limited to the grounds stated or that the disciplinary procedures will be followed in all cases. Notably, there [was] no express assurance that termination will be for cause only." *Id.* at 211–12. Similarly, here, Plaintiff fails to establish an issue of material fact regarding the establishment of an express agreement which would limit the Defendant's right to terminate Plaintiff's employment at will.

As a final matter, the court rejects Plaintiff's assertions—contrary to his previous deposition testimony—that his reliance upon the Handbook and the prospect of future vesting dates in the Defendant's stock incentive plan led him to decline an offer of alternate employment, and that this reliance should impose a contractual obligation upon Defendant.

■ A personal interpretation of a document that is clearly unreasonable in light of the document's plain language cannot be relied upon to create a commitment to continued employment. This case is thus distinguishable from *Weiner*, where the court included the employee's reliance upon oral assurances among the factors it considered in finding the existence of an express agreement. In *Weiner*, unlike the instant case, the oral assurances spoke directly to the at-will status of the plaintiff's employment. *Weiner*, 457 N.Y.S.2d at 194, 443 N.E.2d 441. Moreover, in *Weiner*, the court's finding of an express agreement was primarily based upon language in a written handbook and application. Plaintiff's alleged reliance on oral assurances of continued employment was found only to support these writings, presumably as further evidence that the language of the writings was representative of the intent of the parties. *See Sabetay*, 514 N.Y.S.2d at 212, 506 N.E.2d 919.

■ Nor does any alleged reliance on participation in the stock incentive plan create any commitment on the part of the employer here. As noted above, the stock incentive plan states clearly that it creates no right to continued employment. Even Plaintiff does not argue that the stock plan creates a contract of future employment. In his affidavit in opposition to the present motion Plaintiff states only that he relied in part upon the prospect of the future vesting of stock options in declining an offer of alternate employment. Nowhere does Plaintiff claim that the stock incentive plan incorporates language that amounts to a limitation, either express or otherwise, of the Defendant's right to terminate Plaintiff's employment at will.

In sum, neither the Handbook, Plaintiff's reliance upon his own interpretation thereof nor the stock incentive plan create any contractual obligation on the part of Defendant limiting its right to terminate its employment relationship with Plaintiff. Plaintiff fails to raise any question of fact to the contrary.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.