**XM INTERNATIONAL, INC. Plaintiff(s),**

v.

**CHINA OCEAN SHIPPING COMPANY, M/V Yong Jiang, her engines, tackle, boilers, etc., Capital Risk Concepts, Ltd., Phoenix Assurance Co. of New York, and WM. H. McGee & Co., Inc. Defendant(s).**

No. 96 CIV. 5912(CBM).

United States District Court, S.D. New York.

Oct. 30, 2000.

James M. Kenny, Kenny & Stearns, New York City, for Plaintiff.

James E. Mercante, Rubin & Fiorella LLP, New York City, for Defendants Phoenix Assurance Co. of New York and Wm. H. McGee & Co., Inc.

Thomas A. Leghorn, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York City, for Defendant Capital Risk Concepts, Ltd.

### MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, XM International ("XM"), filed this admiralty and maritime action on August 5, 1996. Plaintiff's claims concern a shipment of galvanized nails allegedly damaged in transit from China to the United States in April 1996 ("the Yong Jiang shipment"). Plaintiff filed claims against China Ocean Shipping Company ("COSCO"), the shipper, M/V Yong Jiang ("Yong Jiang"), the ship, Phoenix Assurance Co. ("Phoenix") and WM. H. McGee & Co. Inc. ("McGee"), the insurance providers, and Capitol Risk Concepts ("CRC"), the insurance broker. Plaintiff seeks judgment against defendants joint and severally in the amount of $359,690.00, together with interest and attorneys fees and costs.

Before the court are defendants Phoenix and McGee's and defendant CRC's motions for summary judgment to dismiss all of plaintiff's claims against these defendants,[1] and plaintiff's cross-motions for summary judgment against Phoenix, McGee, and CRC. For the reasons discussed below, this court GRANTS Phoenix and McGee's motion for summary judgment, GRANTS CRC's motion for summary judgment, and DENIES plaintiff's cross-motions for summary judgment. Plaintiff's claims against these three defendants are hereby DISMISSED.

## I. FACTS

### A. *Phoenix and McGee*

XM's insurance providers, Phoenix and McGee denied plaintiff's claim for the damaged shipment of galvanized nails. The claim was denied because, according to defendants, the cargo was not packed according to the insurance contract which consisted of a policy dated October 1, 1994 and an endorsement dated May 30, 1995. The original policy did not provide coverage for nails; however, the policy provided that coverage could be extended to unapproved goods upon application. At plaintiff's request, plaintiff's broker, CRC, applied to Phoenix to extend the insurance coverage to include shipments of nails. The result was the endorsement which required cargo to be "packed in boxes, cartons, pallets and containers." Phoenix and McGee's Ex. 5. The damaged nails that are the subject of this case were shipped in boxes, cartons, and pallets, but they were not shipped in containers. The method by which the nails were shipped is known as "break bulk," meaning that the nails were shipped in cartons which were loaded onto wooden pallets and stowed directly into the hold of the ship.

### B. *CRC*

CRC, plaintiff's insurance broker, procured the original insurance policy and the endorsement to the policy for plaintiff from Phoenix. Upon obtaining the

---

1. Plaintiff asserts the following claims against Phoenix and McGee: breach of contract, fraud, estoppel, and unjust enrichment.

Plaintiff asserts the same claims against CRC, with the addition of breach of fiduciary duty.

coverage in the endorsement, CRC informed plaintiff by letter dated May 31, 1995 that the endorsement required nails to be packed "in boxes in cartons on pallets in containers." Leghorn Aff., Ex. D. Plaintiff's president stated that she did not request any changes to the procured insurance after receiving CRC's letter concerning the endorsement. *See* Leghorn Aff., Ex. C at 114–115. Plaintiff also received an insurance binder containing the endorsement in June 1995. Until the end of 1995, plaintiff always shipped its cargoes of nails in containers. In order for plaintiff to have a shipment of goods covered under the policy, plaintiff was required to first submit a declaration of the shipments to Phoenix through CRC. In March 1996, plaintiff sent CRC five declarations for the Yong Jiang shipments of nails which described the nails as being shipped in cartons on pallets. These shipments were break bulk; no containers were used.

## II. DISCUSSION

Defendants have moved for summary judgment on plaintiff's claims. According to the Federal Rules of Civil Procedure, summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing a prima facie case demonstrating the lack of a genuine issue of material fact. Once the moving party meets this burden, the non-moving party has the burden of providing enough evidence to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In considering a summary judgment motion, all of the facts must be viewed in the most favorable manner for the non-moving party. *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994).

In an action involving the construction of a contract, summary judgment is improper when the contract is ambiguous. *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 802 (2d Cir.1992). Language "is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement ....'" *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir.1994) (*quoting Care Travel Co. v. Pan Am. World Airways*, 944 F.2d 983, 988 (2d Cir.1991)). "The mere assertion of an ambiguity does not suffice to make an issue of fact." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir.1990).

### A. *Phoenix and McGee*

The insurer defendants Phoenix and McGee argue that they are entitled to summary judgment because plaintiff failed to comply with the insurance policy's specific insuring conditions applicable to shipments of galvanized nails. They argue that the policy specifically required the cargo to be shipped in containers and assert that they did not agree to provide coverage for break bulk shipments of nails.

Plaintiff argues that the language of the policy is ambiguous, therefore preventing this court from granting summary judgment. The allegedly ambiguous language, contained in the endorsement, required the galvanized nails to be "packed in boxes, cartons, pallets and containers." Plaintiff argues that "and containers" means that containers were not required, but were merely one of four covered methods of shipping. By this reading, the galvanized nails could have been packed simply in boxes and placed into the hold of the ship, or simply placed on pallets and placed into the hold of the ship, and so on. Defendants disagree with plaintiff's reading and argue that the language plainly required

the nails to be shipped *in* boxes, *in* cartons, *in* pallets, and *in* containers.

This court's task, in interpreting plaintiff's insurance policy on a motion for summary judgment, is not to choose which offered construction is best, but rather, to decide whether an ambiguity exists which would allow a reasonably intelligent person to adopt plaintiff's reading of the endorsement's language. In *Ingersoll Milling Machine Co. v. M/V Bodena,* the Second Circuit provided the following discourse on insurance policy construction:

> The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous. As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists .... Courts may not create an ambiguity where none exists.

*Ingersoll,* 829 F.2d 293, 305 (2d Cir.1987) (citations omitted).

After hearing the parties arguments and reading the insurance policy, this court does not find the endorsement's language ambiguous. Plaintiff's reading of the endorsement would require, for example, insurance coverage for loose nails strapped directly onto pallets and placed into a ship's hold. This court doubts that a reasonably intelligent person could construe the endorsement to allow for such an insecure and risk-laden method of shipping. The plain language of the policy required the nails to be shipped in boxes, in cartons, in pallets, and in containers. All parties agree that the nails were not shipped in containers. Because no material issues of fact are in dispute and because it is clear that plaintiff did not comply with the coverage terms supplied in its insurance policy, defendants Phoenix and McGee's motion for summary judgment is GRANTED and plaintiff's cross-motion for summary judgment is DENIED.

**B.** *CRC*

Defendant CRC, plaintiff's insurance broker, argues that it is entitled to summary judgment because plaintiff cannot show that CRC breached a contractual or fiduciary duty. Plaintiff claims that CRC was obligated to obtain the correct insurance coverage for its shipments or inform plaintiff of its failure to do so. Plaintiff asserts that it informed CRC in March 1996 through five declarations that the nails would be shipped in cartons on pallets (i.e., break bulk). Plaintiff states that it used declarations to describe the shipments it wished to have insured, and that CRC would then declare these shipments to the insurer under the insurance policy.

CRC argues that it only owed a duty to procure additional insurance for plaintiff if plaintiff specifically requested such insurance. CRC asserts that plaintiff knew of the packaging restrictions in the insurance policy and that it failed to request additional coverage for break bulk shipments of nails. CRC argues that plaintiff's shipping declarations, while a prerequisite for insurance coverage, were not specific requests for additional coverage. As a comparison, CRC points out that when plaintiff wanted additional coverage to ship nails, it made a specific request for such coverage; it did not simply list nails on its shipping declarations. CRC also points out that no declarations sent by plaintiff ever mentioned the use of containers, even those shipments which did use containers, and thus, the fact that the five Yong Jiang declarations did not mention containers would not have indicated to CRC that those shipments would be break bulk.

 Under New York law, a broker cannot be liable for failure to procure additional insurance coverage that it was never asked to obtain. *See Chaim v. Benedict,* 216 A.D.2d 347, 628 N.Y.S.2d 356, 357 (1995). Further, an insurance broker does not have a continuing duty to advise or direct an insured to obtain additional insurance. *See Chaim,* 628 N.Y.S.2d at 357; *Hjemdahl–Monsen v. Faulkner,* 204

A.D.2d 516, 611 N.Y.S.2d 309, 310 (N.Y.App.Div.1994). There is no dispute between the parties that when plaintiff sought additional coverage for its shipments of nails, it made a specific request to its broker for such coverage. CRC then dutifully secured an endorsement to plaintiff's original policy. This court, therefore, does not credit the argument, made by plaintiff, that plaintiff expected additional coverage to be procured ad hoc every time it submitted a shipping declaration. Without a specific request for coverage of the break bulk shipments, this court cannot hold CRC liable for failing to procure additional insurance. Furthermore, as a matter law in New York, a broker cannot be held negligent where the coverage sought could not have been procured prior to the occurrence of the insured event. *See American Motorists Ins. Co. v. Salvatore,* 102 A.D.2d 342, 476 N.Y.S.2d 897, 900 (N.Y.App.Div.1984). In this case, there is no indication that CRC could have procured insurance for break bulk shipments of nails. Because plaintiff cannot show that CRC breached any duty at law, this court GRANTS CRC's motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment.

## III. CONCLUSION

Having GRANTED defendants Phoenix and McGee's and defendant CRC's motions for summary judgment, and having DENIED plaintiff's cross-motions for summary judgment, this court hereby DISMISSES plaintiff's claims against these three defendants.