**Thomas HOWARD, Plaintiff,**

v.

**SPRINT/UNITED MANAGEMENT CO., Sprint, Corp., Michael Guerriero as Vice President of Sprint/United Management Co. and as a Individual, Don Mueller as Site Manager of Sprint/Union Management Co. and as an Individual, Defendants.**

**No. 02 CIV. 01093(CM).**

United States District Court, S.D. New York.

Dec. 30, 2003.

Christopher H. Mills, Patricia A. Cullen, Collier, Jacob & Mills, P.C., Somerset, NJ, for Defendants.

David M. Rosoff, Law Offices of Carton & Rosoff, P.C., Harrison, NY, for Plaintiff.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Thomas Howard ("Howard") brings this action alleging that defendants retaliated against him in violation of Title VII (42 U.S.C. § 2000e), New York Human Rights Law § 296 and New Jersey's Law Against Discrimination (N.J.S.A.10:5–12(d)) for his reporting of several incidences of sexual harassment as well as a breach of contract claim. Defendants move for summary judgment on all claims.

## Background

Plaintiff was hired by Sprint/United Management Company, a division of Sprint Corporation, (collectively "Sprint") to work as a Staff Operations Manager at Sprint's Mahwah, New Jersey office in May 1999 by defendant Mueller. Plaintiff was hired at a starting salary of $71,000 and received a one-time payment of $7,000 for accepting the position. (Def. Rule 56 Statement, ¶ 11.) Plaintiff was also entitled to receive certain other benefits and was eligible for Sprint's Management Incentive Plain ("MIP") under which he could earn a bonus up to a set amount. The parties dispute the scope of plaintiff's duties when he was hired. Initially Howard reported to defendant Mueller, but in late 2000 or early 2001 he began to report to defendant Guerriero. The parties dispute the time when this change of reporting occurred.

Sprint has a sexual harassment policy. It is described in an employee brochure entitled "Sexual Harassment, Not Here, Not Ever" and in the Principles of Business Conduct brochure, both of which are distributed to employees. Pursuant to that policy, employees who become aware of sexual harassment should report the incident to their supervisor, human resources, the Sprint Ethics Helpline, or to any member of management with whom they feel comfortable. (*Id.* ¶ 16, 17).

On August 22, 1999, Maria Caprielian ("Caprielian") sent an e-mail to Mueller and Howard about an e-mail she had received in June 1999 from Michael Smolen ("Smolen"). (*Id.* ¶ 19). Caprielian's e-mail said she had held on to Smolen's e-mail because she had not known what to do, but that she felt Smolen's e-mail, which included a sexual reference to her 22 year old sister, was "extremely inappropriate" and made her "sick." (Cullen Cert., Ex K). She also wrote that "the sexual and chau-

vinistic manner in which Mr. Smolen conducts himself towards his female peers...has made a majority of the females extremely uncomfortable." (*Id.*) After receiving Caprielian's e-mail, Howard forwarded it to Al Morasso in Human Resources. (*Id.*) As a result of this incident, Smolen received a written warning from Mueller. (Def. Rule 56.1 Statement, ¶ 19)

In an August 20, 1999 e-mail to Mueller, Howard asked to meet to discuss the Smolen situation. In the e-mail, Howard explained that he felt he had to report the Caprielian e-mail—as well as a story from his secretary, Bindu Gupta, that Smolen had made inappropriate remarks earlier in the year—or else he too would be seen as culpable. The e-mail also described other business incidents which Howard said Smolen had "escalated." (Pl.Ex. 42.) In response to this e-mail, Mueller wrote "Another challenge for the week upcoming. I can't continue to tear down mountains created from mole hills—there's too much primary mission work to accomplish." (*Id.*) The parties dispute the meaning of this e-mail, and what Mueller intended by his "mole hill" reference.

In April 2000, plaintiff learned from a co-worker that Lisa Hazen ("Hazen"), an employee who was about to leave Sprint, had confided that she had been the recipient of improper conduct from her manager, Peter Busciglio ("Busciglio"), and that another manager, Mauro Cardazzi ("Cardazzi") had failed to assist Hazen. (Def. Rule 56.1 Statement, ¶ 20.) Plaintiff spoke with Hazen and then reported the information to Morasso. Sprint's Corporate Security Department initiated a full investigation into the claims and interviewed several Mahwah employees, including plaintiff, at an off-site location. In his interview with Security, Howard indicated that he was concerned about retaliation from Mueller and others. (Scanlon Supp. Decl., Ex. C3, filed under seal.) In his signed statement, Plaintiff agreed he would not discuss the interview or the investigation with anyone. (*Id.*) Following the investigation, two managers were terminated and another employee was given a written warning. (Def. Rule 56.1 Statement, ¶ 23.)

It is undisputed that Howard did not discuss his involvement in the investigation with anyone other than Morasso, Hazen, Susskind (the employee who reported it to Howard) and the Corporate Investigators. Plaintiff alleges that the individual defendants may have known about his involvement in the investigation by virtue of their positions in management. But, both Mueller and Guerriero deny knowledge of Howard's involvement in this incident prior to this suit, and plaintiff offers no direct evidence to the contrary. Plaintiff does contend that, the day after Cardazzi was fired, Mueller told plaintiff that he (Mueller) would hire Cardazzi the next day if he could. (Pl. Mem. in Opp., 2). Plaintiff also alleges that shortly after this incident, Kingwell (another Mahwah employee) verbally assaulted him about technical problems with the phones. (Howard Decl. ¶ 26.) [1]

In late September or October 2000, Howard reported yet another incident of alleged sexual harassment to Morasso and Mueller. Plaintiff's secretary informed him of another incident in which Smolen made what she believed was an inappropriate comment to Lisa Kogan, a receptionist. Plaintiff spoke with Kogan about the inci-

---

1. Defendants have requested that the Court strike those portions of Howard's Declaration that are argumentative and not based upon facts within his personal knowledge. In deciding this motion I have only drawn from those portions of Howard's declaration which allege facts within his personal knowledge.

dent and confirmed that Smolen told her, "You have a nice pair of blue eyes." In her deposition, Kogan testified that this comment did not bother her, but she could not remember if she had told Howard that it had not bothered her. (Kogan Dep., 16:21–23, ·19:18–20:6.) Howard reported this incident to Morasso and Mueller. Mueller spoke with Kogan about the incident, and she said she was not bothered by the comment and did not intend to have it reported. (Def.Mem., 7.) Nevertheless, Mueller counseled Smolen about his actions. (Id.)

After this incident, plaintiff alleges that Mueller told him to stop sending e-mails to human resources, and that Kingwell again verbally assaulted him and told him he would never be promoted as Staff Operations Manager. (Pl. Mem. in Opp., 3.)

In early 2000, Sprint began an initiative called "One Sprint." Its goal was to achieve cost savings by eliminating the duplications and functions within its separate services. Sprint PCS was required to identify functions that could be assumed by existing personnel in Sprint's corporate headquarters in Kansas City, including their real estate group. In December 2000, defendant Guerriero was promoted to AVP of Site Development, and began to review people's workload looking for opportunities to transfer certain administrative functions to the corporate office in compliance with the One Sprint initiative. One of the first management changes he made was to eliminate any direct reporting between personnel not directly involved in site development to Site Development Directors. (Def. Rule 56.1 Statement, ¶ 28–30.)

Once Howard began reporting to Guerriero, Guerriero began to evaluate Howard's job responsibilities and concluded that the Staff Operations position was no longer needed because Howard's responsibilities could be handled by the real estate department in Kansas. (Id. at 35.) Guerriero asked Howard what his responsibilities were (or as Howard alleges—why his job was necessary) and to describe what he had done in his position. He also suggested that the position might be eliminated. (Id. at 37.) Guerriero concluded that plaintiff's position was no longer needed and sent an e-mail to Teresa Toal in human resources on March 2 outlining his reasons for wanting to terminate the position and have Howard's tasks performed by an administrative assistant. (Guerriero Decl. Ex. D.) Howard alleges that Mueller's, Guerriero's and Kingwell's treatment of him constitute adverse employment actions which, along with the decision to terminate his position, were made in retaliation for his reporting incidents of sexual harassment.

Plaintiff characterizes Guerriero's actions as a "campaign of intimidation," and reported his concerns to the Ethics Helpline in February 2001. His e-mail to the ethics helpline indicated that no one had responded to his complaints that Kingwell had verbally assaulted him and sought advice on whether it was appropriate for Guerriero to be treating him as if his position could be eliminated. (Howard Cert. Ex. 25.) Howard also wrote that he was working in a hostile work environment. (Id.) Howard alleges that he received no response and then e-mailed Valerie Reno in Human Resources and detailed several ways in which he was mistreated and believed Sprint had failed to respond to his concerns. (Id. Ex. 26). He signed the e-mail "just venting." In his brief, Howard alleges that after reporting these incidents Reno failed to conduct an investigation and directed the Helpline to close Howard's complaint. However, the e-mails in Exhibit 26 of Plaintiff's Certification show that Reno

followed up with Howard to find out when he would send her a time line of the events and confirmed that in their conversation he had said he did not want to take any action. Plaintiff responded to Reno's e-mail by writing "I regret sending the e-mail. Please ignore it and accept my apologies." (*Id.*) Despite this response, she asked how things were going and forwarded plaintiff's response that things were "not well" to Tom Jacobs, Teresa Toal and Shawn Bray. Handwritten notes from Kimberly Klosak (a lawyer in Human Resources) and Toal suggest that as of early February 2001, Guerriero was aware of Howard's complaint to Human Resources and mentioned it to Toal. (Pl.Ex. 11, 44.)

On May 9, 2001, plaintiff was informed that his position was being eliminated, effective June 1, 2001. Plaintiff was offered the position of Property Specialist at the same salary as he was previously receiving, but the Property Specialist position was grade 74 as opposed to grade 76 and had a lower bonus range. Defendants say it is undisputed that Howard's position was eliminated because many of the functions he performed were being consolidated at the Sprint corporate headquarters, but plaintiff maintains that the demotion was in retaliation for his reporting incidents of sexual harassment.

Guerriero, of course, was not involved in the original reports of sexual harassment. It is undisputed that Guerriero—with approval from corporate human resources—made the decision to terminate plaintiff's position and to offer him another position. The question, therefore, is what, if anything, did Guerriero know about plaintiff's prior complaints about sexual harassment and retaliation. Plaintiff's conjecture that "he must have known" about the Hazen incident is insufficient. *Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). However, Howard also testified that he told Guerriero about the Kogan incident and Kingwell's treatment of him. Guerriero on the other hand testified that he could not recall if plaintiff had done so or not. (Howard Dep. 248–249; Guerriero 134:2–135:3). Moreover, Guerriero was also aware that Howard had complained to human resources and discussed it with Toal and Klosak. (PX 11, 44).

Plaintiff did not accept the Property Specialist position, but instead applied for a Site Development Manager position, which had just become available. This position was several grades hirer than the position he held. (Def. Rule 56 Statement, ¶ 42.) Howard e-mailed Guerriero indicating his desire to interview for the position and Guerriero told him to speak to Michael McGovern about it. (Howard Decl. Ex. 15.) Guerriero also forwarded Howard's information to McGovern.

Howard interviewed for the position with Michael McGovern. He was one of 14 candidates considered for the position, but did not get the job. (Def. Rule 56 Statement, ¶ 43.) McGovern chose Debra Holden as the best candidate for the position because she had relevant work experience in the area of cell site construction, as well as knowledge of the real estate market. Guerriero reviewed his selection and agreed with it. (*Id.* ¶ 48.) Plaintiff disputes that Holden was the best candidate for the position because she did not have a college degree which was listed as a requirement in the job posting, whereas he had both college and law degrees. (Pl. Mem. in Opp., 5.) He also alleges that Guerriero, McGovern's superior, improperly influenced the hiring process in retaliation for his reporting sexual harassment. Once he received notice that someone else had been selected for the Site Development Manger position, Howard left Sprint.

On August 24, 2001, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right to sue letter on November 21, 2001. The Second Amended Complaint was filed in this action on July 24, 2002.

In this case, the parties do not dispute what actually happened, but rather dispute their significance of the incidents and what reasonable inferences may be drawn from them. Defendants move for summary judgment on the grounds that they have offered a legitimate non-discriminatory rationale for their conduct towards plaintiff. However, plaintiff has offered sufficient evidence—including his positive performance reviews—to rebut defendants explanation. Moreover, defendants' proffered rationale for the termination and the failure to promote fails to account for the other ways in which plaintiff was retaliated against including exclusion from staff meetings, verbal harassment and a failure to investigate his complaints. I must therefore deny defendants' motion for summary judgment and let a jury weigh the evidence and the proffered explanations to determine whether defendants retaliated against plaintiff.

## DISCUSSION

### A. Plaintiff's N.Y.H.R.L. Claim Is Dismissed As to Corporate Defendants and Guerriero

■ An aggrieved party has a right of action under N.Y.H.R.L. for actions committed outside New York when that discrimination was committed by a resident person or domestic corporation. *Sherwood v. Olin Corp.*, 772 F.Supp. 1418, 1425 (S.D.N.Y.1991). It is undisputed that the two corporate defendants in this case are Kansas corporations headquartered in Kansas and cannot therefore be held liable under the statute. *Wishner v. Continental Airlines*, No. 94 Civ. 8239 (LAP), 1997 WL 420286 at *7 (S.D.N.Y. July, 25 1997). The fact that plaintiff was interviewed about the Hazen incident by corporate security in Purchase, New York is irrelevant—all the retaliatory actions complained of occurred in the Mahwah, New Jersey office. Likewise, there is also no evidence that Guerriero is a resident of New York—in fact there is no information about his residence at all—and he cannot therefore be liable under the N.Y.H.R.L. Plaintiff's claims against the corporate defendants and Guerriero under N.Y.H.R.L. are dismissed. The N.Y.H.R.L. claim against Mueller who is a resident of New York remains.

### B. Plaintiff's Contract Claim Is Dismissed

■ It is well-settled under both New York and New Jersey state law that an employment relationship is strictly at-will absent some clear evidence to the contrary. *Woolley v. Hoffmann–LaRoche*, 99 N.J. 284, 491 A.2d 1257 (1985), *modified on other grounds*, 101 N.J. 10, 499 A.2d 515 (1985); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983); *Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 188, 538 N.Y.S.2d 771, 535 N.E.2d 1311, 1313 (1989). Plaintiff, an at-will employee, has asserted a breach of contract claim against defendants on the ground that he was terminated after reporting incidents of sexual harassment pursuant to Sprint corporate policy. He claims that the sexual harassment policy distributed to employees formed a contract that was binding upon Sprint and plaintiff under New York and New Jersey law, and that his termination breached that employment agreement. Citing *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 802–803 (2d Cir. 1992), plaintiff argues that the employment at will rule does not apply when "the em-

ployer has promulgated policies in a personnel manual specifying procedures or grounds for termination" because those procedures for termination become part of the employment contract and must be followed. (Pl. Mem. in Opp., 23.)

Plaintiff's effort to analogize this situation to that where termination procedures outlined in a corporate handbook become part of an employment contract is unavailing. In *Mycak*, the policy at issue set forth a specific and detailed procedure for work force reduction in mandatory and unqualified terms which created an "express limitation" on the employer's right to terminate the employee without following that procedure. *Id.* at 802. Similarly, the New Jersey case cited by plaintiff involved a handbook containing a definitive "four-step disciplinary scheme" that was deemed to create an implied contractual obligation on the employer. *Preston v. Claridge Hotel and Casino*, 231 N.J.Super. 81, 86, 555 A.2d 12, 15 (App.Div.1989). In this case, Sprint's sexual harassment policy makes no assurances about job security, and does not contain any express limitations on Sprint's ability to terminate the employee relationship. If plaintiff was improperly terminated, his remedy lies in the retaliation claims and not in an action for contract.

## C. Issues of Fact Preclude Summary Judgment on Title VII and LAD Claims

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable infer-

ences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). "Conclusory allegations, conjecture and speculation, however, are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir.1998) (citation omitted).

■ The Second Circuit has instructed that district courts must be "especially cautious" in deciding whether to grant the "drastic remedy" of summary judgment in a discrimination case, "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). Because the discriminatory acts are often "hidden under a veil of self-declared innocence," a discrimination victim is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely upon the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). However, a plaintiff cannot survive summary judgment in a discrimination case without "com[ing] forward with at least some credible evidence that the actions of the ... [defendants] were motivated by [ . . . ] animus or ill will." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir.2002).

■ Plaintiff has successfully presented evidence raising an inference of improper conduct in retaliation for his reporting incidents of sexual harassment. Howard has laid out sufficient evidence from which a reasonable jury could infer that Guerriero may have known about the Kogan incident and Kingwell's treatment of Howard prior

to his decision to terminate Howard's position. Whether or not he or Mueller knew about Howard's involvement in the Hazen incident is, like their knowledge of the other incidents, a question of fact for the jury. Thus, issues of fact including, but not limited to, the causal connection between plaintiff's reporting and incidents of alleged retaliation as well as the sufficiency of defendants' proffered non-discriminatory reasons for their conduct toward plaintiff preclude summary judgment in this case.

**D. Punitive Damages**

Defendants argue that plaintiff is not entitled to punitive damages because he cannot show that defendants had knowledge that their conduct violated federal law. This matter is deferred until the close of the evidence.

**Conclusion**

Defendants' Motion for Summary Judgment is granted in part and denied in part. This constitutes the decision and order of the Court.