271 F.3d 81 (2nd Cir. 2001)
 PATRICIA GAYLE BARON, LISA DIAZ, LAURA L. TOOLE, AND AMOS ILAN, PLAINTIFFS-APPELLANTS,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY; GEORGE J. MARLIN, INDIVIDUALLY AND AS EXECUTIVE DIRECTOR OF THE PORT AUTHORITY; A. PAUL BLANCO, INDIVIDUALLY AND AS CHIEF ADMINISTRATIVE OFFICER OF THE PORT AUTHORITY; LOUIS J. LACAPRA, INDIVIDUALLY AND AS DIRECTOR OF HUMAN RESOURCES OF THE PORT AUTHORITY; KATHLEEN A. DONOVAN, INDIVIDUALLY AND AS CHAIRPERSON OF THE PORT AUTHORITY; LEWIS M. EISENBERG, JAMES G. HELLMUTH, HENRY G. HENDERSON, JR., ROBERT C. JANISZEWSKI, PETER KALIKOW, GEORGE D. O'NEILL, ALAN PHILIBOSIAN, MELVIN L. SCHWEITZER, VINCENT TESE, FRANK J. WILSON, INDIVIDUALLY AND AS COMMISSIONERS OF THE PORT AUTHORITY; CHARLES A. GARGANO, INDIVIDUALLY AND AS VICE CHAIRPERSON OF THE PORT AUTHORITY; RICHARD CODD, INDIVIDUALLY AND AS DIRECTOR OF COMMUNITY AFFAIRS OF THE PORT AUTHORITY, DEFENDANTS-APPELLEES.
 Docket No. 00-9065
 U.S. Court of Appeals, Second Circuit
 Argued: May 22, 2001
Decided: November 06, 2001
 
 Steve S. Efron, New York, N.Y. (Renee L. Cyr, on the briefs), for Plaintiffs-Appellants.
 Anne M. Tannenbaum, New York, N.Y., (Milton H. Pachter, Arthur P. Berg, and Megan Lee, on the brief), for Defendants-Appellees.
 Before: Walker, Chief Judge, Jacobs, Circuit Judge, and Larimer,* Chief District Judge.
 John M. Walker, Jr., Chief Judge.
 
 
 1
 Plaintiffs-appellants are four former managerial employees of the Port Authority of New York and New Jersey (the "Port Authority"), who were terminated in the fall of 1995 pursuant to a Port Authority reduction in force ("RIF"). They sued the Port Authority in the United States District Court for the Southern District of New York (Constance B. Motley, District Judge). Although the plaintiffs asserted a variety of federal and state claims, the crux of each claim was that the Port Authority had promised over a period of decades that in the event of a RIF, any decision to terminate or demote them would take account of their performance records and seniority, and that the Port Authority failed to honor this commitment. The district court granted summary judgment in favor of the Port Authority and dismissed the complaint. See Baron v. Port Auth. of New York and New Jersey, 105 F. Supp. 2d 271, 275-80 (S.D.N.Y. 2000) (dismissing implied employment contract claims and Contract Clause claims); Baron v. Port Auth. of New York and New Jersey, 977 F. Supp. 646, 649-52 (S.D.N.Y. 1997) (dismissing Fourteenth Amendment due process claims); see also Baron v. Port Auth. of New York and New Jersey, 968 F. Supp. 924 (S.D.N.Y. 1997).
 
 
 2
 On appeal, plaintiffs argue that the Port Authority (1) breached an implied contractual obligation when it failed to consider their performance and seniority prior to the terminations, (2) violated the Contract Clause of the Federal Constitution, and (3) denied due process to plaintiffs by not affording them pre-termination hearings.
 
 
 3
 For the reasons discussed herein, we disagree. Accordingly, the judgment of the district court dismissing the action is affirmed.
 
 BACKGROUND
 A. The Parties
 
 4
 The Port Authority is a body "corporate and politic" established in 1921 pursuant to a bi-state compact between New York and New Jersey, see N.Y. Unconsol. Law § 6407 (McKinney 2000), and assented to by Congress, see 42 U.S. Stat. 174 (1921). The Port Authority's mission was, and remains, the development of public transportation, terminal, and other facilities of commerce within the statutorily defined Port Authority district, which includes the area in and around New York City harbor. See N.Y. Unconsol. Law § 6403. The Port Authority is governed by a board of commissioners, see id. §§ 6405-06, whose resolutions are essentially legislative acts of the bi-state entity that must be approved by the governors of both states. See id. §§ 7151-52.
 
 
 5
 Plaintiffs Patricia Baron, Amos Ilan, Laura Toole, and Lisa Diaz were hired by the Port Authority in 1966, 1970, 1984, and 1987, respectively. Each plaintiff contends that "job security" was of "great importance" and a "substantial factor" in his or her decision to accept and continue employment with the Port Authority.
 
 
 6
 B. The Port Authority's Merit and Seniority Policy
 
 
 7
 Throughout their employment with the Port Authority, the Authority issued "employment manuals" explaining that in the event of a RIF, any decision as to whom to fire would be based on past performance and seniority. One such manual, the multi-volume Port Authority Instructions ("PAIs"), provided that in the event of a RIF, the termination of employees would proceed from lowest performance category to highest, with seniority governing terminations in any particular performance category. The PAIs were not distributed to the plaintiffs, but instead were provided only to division and department heads, supervisors and the Port Authority library. Plaintiffs contend, however, that employees were encouraged to refer to the library's copies of the PAIs for information regarding the Port Authority's policies, rules or procedures.
 
 
 8
 A second writing containing the policy, the Guide for Port Authority Personnel (the "Port Authority Guide" or the "Guide"), was distributed to Baron at the time she was hired, but was no longer issued when the other plaintiffs commenced employment with the Port Authority. The Guide stated that although the Port Authority might need to eliminate positions "for reasons of economy and efficiency," "[i]n the event of any reduction in the work force merit and ability as well as length of service and salary step will be considered in deciding how the reduction will be accomplished."
 
 
 9
 In addition to these written employment manuals, the plaintiffs claim that over the course of their employment they were orally assured by Port Authority supervisors that merit and seniority would be considered in the event of a RIF. The plaintiffs contend that these writings and accompanying oral assurances, taken together, gave rise to an implicit contractual obligation on the part of the Port Authority to take merit and seniority into consideration in the event of a RIF.
 
 
 10
 The Port Authority counters that, although it did have a general corporate policy of considering merit and seniority, this policy did not rise to the level of an implied contractual obligation. In support of this argument, the Port Authority identifies various disclaimers in the PAIs and the Port Authority Guide that, it argues, disavowed any intent to obligate itself to a policy of considering merit and seniority, and thereby preserved its ability to terminate the plaintiffs at will.
 
 C. The 1995 RIF
 
 11
 On September 7, 1995, following the advice of an outside consultant who suggested that the Port Authority needed to "trim" its work force for efficiency reasons, the commissioners of the Port Authority authorized a RIF. On that day, the commissioners also eliminated the merit and seniority provision of the PAIs and replaced it with the following:[1]
 
 
 12
 Each affected department director, consistent with sound business and policy discretion and in order to improve [the] effectiveness and efficiency of the Port Authority, [should] identif[y] the particular employees who are subject to involuntary removal[.]
 
 
 13
 Shortly thereafter, the Port Authority identified and notified approximately 316 persons, including the plaintiffs, that their positions would be eliminated in 30 days. Over the next 18 months, the Port Authority eliminated an additional 648 positions through RIFs and early retirement packages.
 
 
 14
 Approximately a year after their termination, plaintiffs filed this suit, claiming (insofar as relevant to this appeal) violations of (1) New York's common law of implied-employment contracts, (2) the Contract Clause of the Federal Constitution, see U.S. Const. art. I, § 10, cl. 1, and (3) the procedural due process guarantee of the Fourteenth Amendment, see U.S. Const. amend. XIV, § 1.
 
 DISCUSSION
 
 15
 We review the district court's grant of summary judgment de novo. See Young v. County of Fulton, 160 F.3d 899, 902 (2d Cir. 1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
 
 
 16
 1. Implied Contract Claims Under New York Law
 
 
 17
 In New York, it has long been "settled" that "an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987) (citation omitted); see also Rooney v. Tyson, 91 N.Y.2d 685, 690 (1998); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 305 (1983). This presumption can be rebutted, however, by establishing an "express limitation in the individual contract of employment" curtailing an employer's right to terminate at will. Gorrill v. Icelandair/Flugleidir, 761 F.2d 847, 851 (2d Cir. 1985).
 
 
 18
 Policies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract. See, e.g., Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 87-89 (2d Cir. 1998) (holding that policies set out in employee handbook formed implied contractual obligations); Gorrill, 761 F.2d at 851-53 (same; notably no express disclaimer in company's operations manual). To establish that such policies are a part of the employment contract, an employee alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment. See Lobosco v. New York Tel., 96 N.Y.2d 312, 316 (2001). The New York Court of Appeals has admonished that this is a "difficult pleading burden," Sabetay, 69 N.Y.2d at 334-35, and that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements,"[2] Lobosco, 96 N.Y.2d at 317 (emphasis added).
 
 
 19
 Here, the plaintiffs' implied contract claims fail because none of the writings identified by the parties--the Port Authority Guide (Baron) or the PAIs (all the plaintiffs)--constitutes a written express limitation on the Port Authority's right to hire, fire, promote, demote, transfer or take any other employment action it deems otherwise appropriate. To the contrary, the disclaimers at the front of both the Port Authority Guidebook and the PAIs expressly and specifically disavow any intent on the Port Authority's part to accept contractual limitations on its rights as an at-will employer. For example, the Guidebook's disclaimer stated that the Guidebook is a "guide to help" employees and not a "rule book." The PAIs' disclaimer was even more explicit: the PAIs are "not intended to create any rights or presumptions," do not "impose any standards or obligations," and are "solely for internal Port Authority guidance."[3] These disclaimers plainly convey the Port Authority's intention that the provisions in the Guidebook and PAIs are non-binding. No understanding by the plaintiffs to the contrary would have been objectively reasonable.
 
 
 20
 Plaintiffs try to avoid the fatal effect of these disclaimers on their implied contract claims by arguing that the New York Court of Appeals' decision in Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 460-61 (1982), and our decision in Mycak v. Honeywell, Inc., 953 F.2d 798, 801-02 (2d Cir. 1992), recognized that a general disclaimer in an employee handbook does not as a matter of law foreclose a finding that specific provisions within the handbook are "express limitations." We do not share the plaintiffs' readings of either Weiner or Mycak.
 
 
 21
 In Weiner, the New York Court of Appeals found the following handbook policy to be an express limitation:
 
 
 22
 [T]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee had been taken and failed. However, if the welfare of the company indicates that dismissal is necessary, then the decision is arrived at and is carried out forthrightly.
 
 
 23
 57 N.Y.2d at 460-61 (emphasis added) (internal quotation marks and citations omitted). Plaintiffs contend that the last sentence of the excerpt was a disclaimer and that it did not preclude the court from finding that the provisions of the manual constituted contractual obligations.
 
 
 24
 We find it significant that the Weiner court itself never treated the ambiguous language plaintiffs identify as a disclaimer. See generally Lobosco, 96 N.Y.2d at 316 n.2, (stating that "this Court has not previously addressed the effect of a disclaimer on a breach of contract claim arising from an employee manual"). As a result, we decline to give the Weiner court's silence any persuasive effect--some tea leaves carry no message. But see Mycak, 953 F.2d at 802.
 
 
 25
 We are equally unpersuaded by the plaintiffs' reading of Mycak. Mycak held that the particular employment handbook's "language of qualification (`in the final analysis, specific judgment and discretion will govern')" did "not negate the binding force of the Handbook's more specific provisions under New York law." Id. at 802 (emphasis added to indicate the "language of qualification"). Although the court's explanation for this holding was somewhat conclusory, it appears to us that the holding was motivated by the fact that the "qualification," when juxtaposed to the "very specific and detailed procedure for work force reduction[,] [stated] in mandatory and unqualified terms," was too ambiguous to disclaim a contractual intent as a matter of law. Thus, a material question remained as to whether the Mycak handbook created contractual obligations on the defendant-employer's part.
 
 
 26
 The ambiguity of the disclaimers in Mycak contrasts with the clarity of the Port Authority's disclaimers here. These disclaimers plainly disavow any contractual intent on the part of the Port Authority. Unlike the situation in Mycak where a material question existed for the jury, the disclaimers in the Port Authority Guide and the PAIs are sufficiently clear to defeat as a matter of law the plaintiffs' implied contract claims.
 
 
 27
 Even if we were to agree with the plaintiffs that Mycak stands for the proposition that a disclaimer in an employee handbook, no matter how unambiguous, does not as a matter of law preclude a finding that the specific provisions of the handbook are express limitations, we would be compelled to conclude that any such holding is no longer good law.[4] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). The New York Court of Appeals' recent decision in Lobosco--handed down after oral argument in the instant case--makes clear that "conspicuous disclaiming language" in an employee handbook "preserves [the employer's] . . . at will employment relationship with" its employees as far as the provisions in an employee handbook are concerned. Lobosco, 96 N.Y.2d at 316-17 (stating that "[a]n employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer").
 
 
 28
 With respect to our earlier decisions relating to implied contracts under New York law, we believe that one additional point bears noting. Previously we have held that in order to determine whether the presumption of an at-will relationship is overcome, "the trier of facts will have to consider the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives."[5] Marfia, 147 F.3d at 88 (quoting Jones v. Dunkirk Radiator Corp., 21 F.3d 18, 22 (2d Cir. 1994)) (alterations in original, internal quotation marks omitted). Although this remains the case generally, where a sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook such that the employee reasonably could be expected to read it is at issue, the totality of the circumstances inquiry is unnecessary; the implied contract claim may be dismissed as a matter of law.
 
 
 29
 To recap, in light of the general clarity with which the disclaimers in the Port Authority Guide and the PAIs disavow any contractual intent, the Port Authority "clearly preserve[d]" its rights as an at-will employer of the plaintiffs. Lobosco, 96 N.Y.2d at 316. Accordingly, the Port Authority was not contractually obligated to consider plaintiffs' seniority or merit in terminating them in the course of the 1995 RIF.[6]
 
 2. Federal Constitutional Claims
 
 30
 The absence of a contractual relationship beyond that of mere at-will employment is fatal to the plaintiffs' Contract Clause claim, see U.S. Const. art. I, § 10, cl. 1, and Fourteenth Amendment procedural due process claim, id. amend. XIV, § 1. A necessary prerequisite for a Contract Clause claim is a state's impairment of a contract. Here, however, the Port Authority's execution of the RIF did not impair any contractual obligation owed the plaintiffs. Rather, the Port Authority simply exercised its right as plaintiffs' at-will employer to terminate them at any time for any lawful reason. Cf. Harney v. Meadowbrook Nursing Ctr., 784 S.W.2d 921, 922 (Tenn. 1990) (stating that "an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all").
 
 
 31
 Plaintiffs' procedural due process claims fail because at-will employment is not a constitutionally protected property interest. Thus, procedural due process protections are not triggered. See, e.g., Luck v. Mazzone, 52 F.3d 475, 477 (2d Cir. 1995) (per curiam) (stating that employee "lacked state civil-service tenure or any other formal employment guarantee that would have given her a cognizable property interest in her job"); White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1062 (2d Cir. 1993) ("An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause.").
 
 CONCLUSION
 
 32
 We have considered the plaintiffs' other arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.
 
 
 33
 Each side to bear its own costs for this appeal.
 
 
 
 Notes:
 
 
 *
 The Honorable David G. Larimer of the United States District Court for the Western District of New York, sitting by designation.
 
 
 [1]
 Notably, the PAIs expressly contemplated amendment and alteration. The introductory section of the PAIs provided: "[The PAIs] are subject to modification, in general or for any particular instance and retroactively or otherwise, in the discretion of the Executive Director."
 Modifications to the PAIs occurred over time in accordance with this provision. For example, the PAI regarding consideration of merit and seniority during a RIF has been modified three times since its promulgation in 1975.
 
 
 [2]
 Though not directly implicated in the present litigation, several rules have been developed by New York courts to honor this admonition. "Mere existence of a written policy, without the additional elements . . ., does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer." De Petris v. Union Settlement Ass'n, 86 N.Y.2d 406, 410 (1995). Similarly, "oral assurances with only general provisions in the employee manual [are in]sufficient" to create an implied employment contract. Skelly v. Visiting Nurse Assoc. of Capital Region Inc., 619 N.Y.S.2d 879, 881 (App. Div. 3d Dep't 1994) (citation omitted).
 
 
 [3]
 In its entirety, the disclaimer at the front of the Port Authority Guide provided that:
 This booklet is called a guide, rather than a rule book, because it is just that--a guide to help you become familiar with the more important features of the Port Authority's personnel policies. In times to come, some of the policies and procedures described in the following pages may be changed to fit new situations. The basic idea behind them, however, will never change. It is described in brief in the six principles above. Together they add up to: fair treatment for everyone, and fitting recognition for meritorious service.
 (Emphasis in original). Similarly, the disclaimer at the front of the PAIs stated:
 [PAIs] are not intended to create any rights or presumptions in favor of any persons or to impose any standards or obligations on the Port Authority for the benefit of any persons but are solely for internal Port Authority guidance. They are subject to modification, in general or for any particular instance and retroactively or otherwise, in the discretion of the Executive Director.
 
 
 [4]
 For a number of years now, commentators and practitioners have identified a divergence between New York state courts and the federal courts of the Second Circuit in the application of New York's at-will employment doctrine. See, e.g., William L. Kandel, Wrongful Discharge, 67 PLI/NY 369, 397-98 (1999); Wayne N. Outten, Checklist of Causes of Action for Employee's Counsel in New York, 571 PLI/Lit 731, 753 (1997); Thomas G. Eron & John G. McDonald, Employment Law, 45 Syracuse L. Rev. 275, 279 (1994); Joseph DeGiuseppe, Jr., Weiner v. McGraw Hill, Inc.: Ten Years After, 19 Westchester B.J. 227, 241 (1992); Gary Minda, Employment At-Will in the Second Circuit, 52 Brook. L. Rev. 913, 937 (1986).
 In light of the clarity with which the New York Court of Appeals spoke in Lobosco, we believe the burden is now on the federal courts of this circuit to eliminate the divergence. See generally Judge Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 Va. L. Rev. 1671, 1675 (1992) ("It is reasonable to assume that where the state law is clear, the federal judges, well-trained in the principles underlying Erie, will apply it.").
 
 
 [5]
 It could be argued that the PAIs' disclaimer is ineffective against plaintiff Toole. In her affidavit and briefs, Toole contends that having become "frighten[ed]" after a 1989 RIF that she might be terminated, she "went to . . . an Administrative Assistant in [her] department, and asked for the PAIs regarding RIFs." The administrative assistant provided her with "the sections [the assistant] thought were" "appropriate," but did not provide Toole with a copy of the disclaimer at the front of the PAIs.
 Assuming we were to accept that this created a material question as to whether the PAIs' disclaimer is effective against Toole, we would still conclude that the grant of summary judgment in favor of the Port Authority was appropriate. Under the totality of the circumstances, "no binding contract" was created by the PAIs. Baron, 105 F. Supp. 2d at 279. Dispositive would be the facts that (1) the PAIs were only distributed to supervisory officials at the Port Authority, and (2) Toole was not "given any assurances from the employer that the [PAIs in fact] were controlling." Notably, these factual omissions substantially distinguish Toole's case from our earlier decisions where, in the absence of disclaimers, we found that under the totality of the circumstances an employee handbook had created implied contractual obligations on the defendant-employer's part. See, e.g., Marfia, 147 F.3d at 89; Gorrill, 761 F.2d at 852- 53.
 
 
 [6]
 The Port Authority argues that our decision in Finley v. Giacobbe, 79 F.3d 1285, 1292 (2d Cir. 1996), provides an alternative basis for affirming the district court's grant of summary judgment, namely that plaintiffs failed to file Article 78 proceedings in New York state court prior to initiating their actions in federal court. Although we do not reach this question because we find dispositive the absence of implied contractual obligations limiting the Port Authority's ability to terminate the plaintiffs during a RIF, we do note that the Port Authority's argument is not without merit. As we held in Finley, a public employee who wishes to challenge his or her discharge must do so by filing an Article 78 proceeding. Finley, 79 F.3d at 1292; see also Faillace v. Port Auth., 517 N.Y.S.2d 941, 947 (App. Div. 1st Dep't 1987) (breach of an employment contract claim against the Port Authority must be brought in "a CPLR Article 78 proceeding and not [in] an action at law"). No such proceeding was filed by plaintiffs, and, in fact, plaintiffs appear to concede that their breach of contract claims may not be "actionable at this juncture as a pure state law claim . . . ." Judge Jacobs is of the view that the point stated in this footnote is alone sufficient to support affirmance, and joins the remainder of this section of the opinion as an alternative holding with which he fully agrees.