**William R. KUNDA, Plaintiff,**

**v.**

**CAREMARK PHC, L.L.C., Doing Business as CVS Caremark, Defendant.**

**No. 14–CV–6125 (JFB)(AYS).**

United States District Court, E.D. New York.

Signed Aug. 13, 2015.

Darrell John Conway, Darrell J. Conway, P.C., West Babylon, NY, for Plaintiff.

Craig M. Dolinger, McAndrew Conboy & Prisco, L.L.P., Melville, NY, Jonathan Shank, Edwards Wildman Palmer, L.L.P., Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

Plaintiff William R. Kunda ("Kunda" or "plaintiff") brings this breach of contract claim under New York state law alleging he was improperly and arbitrarily terminated by defendant Caremark PhC, L.L.C., doing business as CVS Caremark ("CVS" or "defendant").[1] Defendant now moves to dismiss the plaintiff's complaint, pursuant to Federal Rule of Civil Proce-

---

1. The Court notes that defendant asserts that the it should properly be named as CVS Albany, L.L.C. rather than Caremark PhC, L.L.C.

(Pl. Mem. at 1.) For the purposes of discussing the present motion, the Court will refer to plaintiff as "CVS."

dure 12(b)(6). For the reasons set forth herein, defendant's motion is granted.

## I. FACTS

The following facts are taken from the complaint ("Compl.") and are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

Plaintiff was hired by defendant CVS on or about May 2006 as an Assistant Store Manager at the CVS store located in Center Moriches, New York. (Compl. ¶ 4.) CVS promoted plaintiff to Store Manager of the Mattituck store, located at 9870 Main Road, Mattituck, New York, in or about 2010. (Id. ¶ 5.) Plaintiff continued to work as the Store Manager of the Mattituck store from 2010 until March 2014. (Id. ¶ 6)

On or about February 25, 2014, plaintiff alleges that District Manager Robert Nielsen questioned plaintiff about an interaction he had with another employee at the CVS store in Coram, New York. (Id. ¶ 10.)

The interaction was allegedly captured on video. (Id.) After plaintiff and Nielsen watched the video recording, plaintiff asserts "it was determined that [the video] did not provide any proof of the alleged interaction." (Id.) Plaintiff also states that the video "did not show any harassment or physical altercations between the parties." (Id. ¶ 12.) Nielsen suspended plaintiff temporarily pending further investigation of the incident between plaintiff and the other employee. (Id. ¶ 10.) On or about March 5, 2014, Nielsen informed plaintiff that he was terminated based on the interaction with the employee. (Id. ¶ 11.) Plaintiff requested permission to review any information available regarding the allegations, but plaintiff asserts that defendant did not provide him with a copy of the video recording. (Id. ¶ 12.)

■ From 2006 through March 2014, CVS had an Employment Handbook which is attached to defendant's motion as Exhibit 2.[2] (Id. ¶ 8.) Section 3 of the Handbook reads as follows:

**2.** In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and ... is *integral to the complaint.*" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (emphases in original)). Because the Employment Handbook is incorporated by reference in the plaintiff's complaint and is integral to plaintiff's complaint with respect to this cause of action, the Court may consider the document for the purposes of defendant's Rule 12(b)(6) motion. *See, e.g., Ubal-Perez v. Delta Air Lines Inc.*, No. 13 CV 2872(SJ)(JMA), 2014 WL 223227, at *5

(E.D.N.Y. Jan. 21, 2014) (finding that defendant's employment manual was "integral" because "plaintiff's complaint relies heavily on [the] document[] in pleading his breach of contract claims" and noting that the Court could consider the Employment Manual provided by defendant because "[p]laintiff does not contest the authenticity of these documents in his reply" and the Court had no "reason to conclude that the documents are not authentic."); *Wait v. Beck's N. Am., Inc.*, 241 F.Supp.2d 172, 184 n. 12 (N.D.N.Y.2003) ("The [Employee] Handbook may be considered in connection with the instant motion to dismiss because it is referenced in the Complaint and integral to plaintiff's sixth, seventh, and eighth causes of action."). The Court notes that though plaintiff's complaint refers to CVS' Employment Handbook as Exhibit A, the Handbook was not attached to his submissions to the Court. Defendant includes a copy of the Employment Handbook, signed by plaintiff, as Exhibit 2 to its motion. At oral argument, counsel for plaintiff noted that he did not contest the authenticity of defendant's

Examples of conduct that generally lead to discipline and termination include but are not limited to:

- Rude conduct toward others
- Offensive language on company premises or when representing the company
- Sleeping on the job
- Conducting personal business at work
- Frequent absences, tardiness, or leaving work before the end of your shift
- Interference with or failure to cooperate with any investigation
- Commission of a crime
- Illegal or unethical conduct, whether on or off the job
- Insubordination
- Dishonesty
- Theft or fraud of any kind, including those listed in the Employee Theft and Fraud section of this handbook
- Working "off the clock" or requiring a subordinate to work "off the clock"; i.e., without pay for time worked
- Willful or careless destruction of or damage to the company's or another person's property
- Falsification of any company records or reports including the false reporting of time worked for yourself or others
- Horseplay
- Disregarding or violating any Safety Rules
- Disabling safety guards or key lockouts on any equipment including conveyors, balers, forklifts or other power equipment
- Possession of weapons of any kind in the workplace

- Smoking in any company facility
- Asking or allowing a minor employee to perform duties that are unsafe or violate state or federal child labor laws
- Use, possession or distribution of alcohol, drugs or any other intoxicant while on company premises or reporting to work while under the influence of alcohol, drugs or any other intoxicant
- Harassment or threats toward another person
- Selling tobacco, alcohol or other age restricted products to minors
- Selling any product in violation of state or federal law
- Unauthorized use of company property or equipment
- Making false or malicious statements regarding employees, customers, the company or products
- Failing to maintain a license or certificate required for the job, or failing to report an adverse action taken against a license or certificate

(Employment Handbook at 17–18.) Plaintiff contends that he did not engage in any of the activities listed in this section of the Employment Handbook during his employment with CVS. (Compl. 14.) The Employment Handbook also contains the following language:

THE CONTENTS OF THIS HANDBOOK ARE GUIDELINES ONLY AND SUPERSEDE ANY PRIOR HANDBOOK. NEITHER THIS HANDBOOK NOR ANY OTHER COMPANY GUIDELINES, POLICIES OR PRACTICES CREATE AN EMPLOYMENT CONTRACT. THE COMPANY HAS THE RIGHT, WITH

Exhibit 2 and that he did not object to the Court considering it for the purposes of ruling on the present motion. Accordingly, the

Court will rely on and cite to this version of the Employment Handbook throughout this ruling.

OR WITHOUT NOTICE, IN AN INDIVIDUAL CASE OR GENERALLY, TO CHANGE ANY OF ITS GUIDELINES, POLICIES, PRACTICES, WORKING CONDITIONS OR BENEFITS AT ANY TIME.

NO ONE IS AUTHORIZED TO PROVIDE AN EMPLOYEE WITH AN EMPLOYMENT CONTRACT OR SPECIAL ARRANGEMENT CONCERNING TERMS OR CONDITIONS OF EMPLOYMENT UNLESS THE CONTRACT OR ARRANGEMENT IS IN WRITING AND SIGNED BY THE PRESIDENT. EMPLOYMENT WITH THE COMPANY MAY BE TERMINATED AT ANY TIME WITH OR WITHOUT CAUSE OR NOTICE BY THE EMPLOYER OR THE COMPANY.

(Employment Handbook at 2.) In addition, employees are required to sign an acknowledgement form at the back of the Employment Handbook that reads as follows:

> I have received today a copy of the CVS Caremark handbook. I understand that the handbook contains management guidelines only.... I understand that neither this handbook nor any other communication by a management representative, whether oral or written, is intended in any way to create a contract of employment. Since employment with CVS Caremark is voluntarily entered into, I am free to resign at any time. Similarly, the Company may terminate the employment whenever it believes it is appropriate.

(*Id.* at 54.) According to the Employment Handbook provided by defendant as Exhibit 2 to its motion, plaintiff signed and dated this acknowledgment on June 1, 2009. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff filed the instant complaint in state court on August 1, 2014, alleging breach of contract associated with his alleged arbitrary and improper termination on or about March 5, 2014. Defendant was served with the complaint on September 25, 2014. On October 20, 2014, defendant removed the instant action from state court to federal court on the basis of diversity jurisdiction. On October 27, 2014, defendant moved to dismiss plaintiff's complaint under Rule 12(b)(6). Plaintiff filed a memorandum in opposition on December 8, 2014. Defendant replied in support of its motion on December 19, 2014. The Court held oral argument on February 6, 2015. The matter is fully briefed and the Court has fully considered the parties' submissions.

## III. STANDARD OF REVIEW

■ In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

■ The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion

to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955).

■ The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (internal citations omitted); *see Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[T]he district court

... could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York,* No. 04–CV–1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (court can consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## IV. DISCUSSION

Plaintiff's complaint alleges breach of contract, based on the written employment policies that were published in CVS' Employment Handbook. (Compl. ¶¶ 13–16.) Specifically, plaintiff argues that he "was arbitrarily and improperly terminated" by CVS because he did not engage in any of the behaviors listed in Section 3 of the Employment Handbook. (*Id.*) Defendant argues that these allegations cannot form the basis of a breach of contract claim as a matter of law. As set for the below, the Court agrees.

■ As a general matter under New York law, a failure by an employer to follow its internal policies cannot form the basis of a breach of contract claim, unless, *inter alia,* mutual assent to enter into an implied-in-fact contract is shown. *See Maas v. Cornell Univ.,* 94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (N.Y.1999). Reviewing the complaint in its entirety and taking plaintiff's allegations as true (and construing those allegations most favorably to plaintiff), the Court determines that plaintiff has not alleged any facts that could plausibly support an assent by CVS to deem its internal policies as an implied-in-fact contract. In fact, the relevant documents demonstrate the contrary. The New York Court of Appeals addressed this issue in *Maas:*

> Maas has failed to plead a cognizable breach of contract action. The University nowhere reflected an intent that the

provisions of its Code would become terms of a discrete, implied-in-fact agreement, for purposes such as are alleged in this lawsuit. The Code itself is heavily informational in nature and does not express or support the implication of any promise on the part of the University. While the Code and its attendant regulations promulgate the University's sexual harassment policy and provide procedures for dealing with sexual harassment claims, Maas' essential employment duties and rights are only indirectly affected by these provisions. Finally, in this regard, Cornell's handbook clearly states that it can be altered at any time (impliedly unilaterally), and cautions readers and affected persons to seek out the most updated edition. That feature is hardly the harbinger of a legally binding set of arrangements. We conclude, therefore, that there is no support in this record or in relevant authority sources to sustain Maas' implied contract cause.

94 N.Y.2d at 94, 699 N.Y.S.2d 716, 721 N.E.2d 966. Here, CVS' Employment Handbook clearly states, in its "Disclaimer" at the front of the handbook, that the "contents of this handbook are guidelines only" and "neither this handbook nor any other company guidelines, policies or practices create an employment contract." (Employment Handbook at 2.) The Disclaimer also notes that "the company has the right, with or without notice, in an individual case or generally, to change any of its guidelines, polices, practices, working conditions or benefits at any time." (*Id.*) The Disclaimer also emphasizes the at-will nature of the employment relationship, stressing that "employment with the company may be terminated at any time with or without cause or notice by the employee or company." (*Id.*) Plaintiff furthermore signed a receipt form on June 1, 2009 acknowledging that the "handbook contains management guidelines only" and "neither this handbook nor any other communication by a management representative, whether oral or written, is intended to in any way create a contract of employment." The acknowledgement form, also highlighting the at-will employment relationship, states that "[s]ince employment with CVS Caremark is voluntarily entered into, I am free to resign at any time ... [and] the Company may terminate the employment whenever it believes it is appropriate." (*Id.* at 54.) Thus, under *Maas*, plaintiff's claim for breach of contract cannot proceed. *Accord Daniel v. Long Island Hous. P'ship*, No. 08–CV–1455 (JFB)(WDW), 2009 WL 702209, at *11 (E.D.N.Y. Mar. 13, 2009), *aff'd and appeal dismissed by summary order*, No. 10–CV–4359 (2d Cir. March 22, 2011) (holding that no implied breach of contract claim could proceed because the employee handbook at issue explicitly stated that "neither this manual nor any communication by a management representative is intended to, in any way create a contract of employment, and that either [plaintiff] or the company may terminate [her] employment at any time, with or without cause") (internal quotations omitted and alteration in original); *Wait v. Beck's North America, Inc.*, 241 F.Supp.2d 172, 185 (N.D.N.Y.2003) ("Moreover, contrary to plaintiff's argument, the Handbook did not merely retain BNA's right to discharge plaintiff at-will, but expressly precluded reliance upon the Handbook as the foundation of *any* right or contract ... Accordingly, no contractual relationship, express or implied, was formed.") (emphasis added).

█ The case authority is even clearer in the specific context of a wrongful termination claim. In this context, New York recognizes an employee's action for breach of contract against an employer based on its written policies only if the employer

"made the employee aware of its express written policy limiting its right of discharge and ... the employee detrimentally relied on that policy in accepting the employment." *De Petris v. Union Settlement Assn.*, 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (N.Y.1995); *see also Baron v. Port Auth. of New York and New Jersey*, 271 F.3d 81, 85 (2d Cir.2001) ("an employee alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment.") (citing *Lobosco v. N.Y. Tel. Company/NYNEX*, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (N.Y.2001)). However, "[t]he New York Court of Appeals has admonished that this is a difficult pleading burden, and that routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Baron*, 271 F.3d at 85 (internal citations and quotations omitted).

Plaintiff clearly fails to satisfy the "difficult pleading burden" required under New York law. *Id.* Courts applying New York law in similar situations have consistently held that "the explicit disclaimer of a contractual relationship contained on the facing page clearly preserves [the employer's] right to maintain an at-will employment relationship with plaintiff." *Lobosco*, 96 N.Y.2d at 316, 727 N.Y.S.2d 383, 751 N.E.2d 462; *see also Ubal–Perez*, 2014 WL 223227, at *5 (noting that " '[w]here a manual or policy statement contains a disclaimer that nothing in the manual is intended to create a contract, an employee cannot bring a breach of contract claim based on the manual or policy statement' ") (quoting *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2011 WL

135026, at *8 (S.D.N.Y. Jan. 14, 2011)); *Fraser v. Fiduciary Trust Co. Int'l*, No. 04 Civ. 6958(PAC), 2009 WL 2601389, at *9 (S.D.N.Y. Aug. 25, 2009) ("Under New York law, express language in an employee policy manual indicating that employees are terminable at will 'prevents the creation of a contract and negates any protection from termination the employee may have inferred from the manual.' ") (quoting *Lobosco*, 96 N.Y.2d at 316–17, 727 N.Y.S.2d 383, 751 N.E.2d 462).

Here, it is clear from the allegations of the complaint that plaintiff was an at-will employee. *See Baron*, 271 F.3d at 85 ("In New York, it has long been settled that an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This presumption can be rebutted, however, by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will.") (internal citations and quotations omitted); *De Petris*, 86 N.Y.2d at 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 ("Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party. This State neither recognizes a tort of wrongful discharge nor requires good faith in an at-will employment relationship.") (internal citations omitted). Since the document at issue expressly does not limit CVS' actions as an employer regarding any of the contents in the Employment Handbook, plaintiff cannot assert a claim for breach of contract with respect thereto. *See Baron*, 271 F.3d at 85–86 ("Here, the plaintiffs' implied contract claims fail because none of the writings identified by the parties ... constitutes a written express limitation on the Port Authority's right to hire, fire, promote, demote, transfer or take any other employment action it deems otherwise appropriate. To the contrary,

the disclaimers at the front of both the Port Authority Guidebook and the PAIs expressly and specifically disavow any intent on the Port Authority's part to accept contractual limitations on its rights as an at-will employer ... These disclaimers plainly convey the Port Authority's intention that the provisions in the Guidebook and PAIs are non-binding. No understanding by the plaintiffs to the contrary would have been objectively reasonable."); *see also Junk v. Aon Corp.*, No. 07 Civ. 4640(LMM)(GWG), 2007 WL 4292034, at *5 (S.D.N.Y. Dec. 3, 2007) ("Plaintiff's reliance upon the whistleblower provision cannot be considered objectively reasonable, particularly because of the disclaimer within the same document that clearly expresses Defendants' intention that it not be taken as a binding, contractual agreement. In light of the foregoing, Defendants' motion to dismiss Plaintiff's breach of contract claim, based upon the whistleblower provision in Aon's 'Code of Business Conduct,' is hereby granted."); *Mirabella v. Turner Broadcasting Sys., Inc.*, No. 01 Civ. 5563(BSJ), 2003 WL 21146657, at *2 (S.D.N.Y. May 19, 2003) ("The New York Court of Appeals has held that an express disclaimer of contractual rights in an employee manual bars an action for breach of contract based on the terms of the manual.") (citing *Lobosco*, 96 N.Y.2d at 317, 727 N.Y.S.2d 383, 751 N.E.2d 462).

■ In addition, even if the Employment Handbook did not include the disclaimers preserving the at-will employment relationship, the Court concludes that plaintiff's breach of contract claim would still fail because the Employment Handbook does not contain an express limitation on CVS' ability to fire its employees. In order for the Employment Handbook "to become a contract, it would have to contain some specific limitation on [CVS'] right to terminate its employees at-will." *Ubal–Perez* at *7; *see also Brown*

*v. Daikin America, Inc.*, 756 F.3d 219, 231–32 (2d Cir.2014) (concluding that plaintiff failed to "rebut the presumption of at-will employment ... by demonstrating an express limitation in the individual contract of employment curtailing an employer's right to terminate at will") (internal quotations omitted); *Baron*, 271 F.3d at 85 (holding that "the plaintiffs' implied contract claims fail because none of the writings identified by the parties ... constitutes a written express limitation on the Port Authority's right to hire, fire, promote, demote, transfer, or take any other employment action."). Here, Section 3 of the Employment Handbook does not set out exclusive avenues for termination, but instead provides a non-exhaustive list of conduct that may warrant termination or discipline. The preamble language in Section 3 states that the list includes "[e]xamples of conduct that generally lead to discipline and termination" but that the list is "not limited to" those specified. (Employment Handbook at 17.) In fact, the handbook even acknowledges that "a handbook cannot cover every behavior or act that would be unacceptable" but only "can provide enough examples to make the point." (*Id.*) The handbook cautions employees to realize as they read through the handbook that they "could lose [their] job if [they] disregard or violate any company policy or procedure, whether contained in this handbook or maintained elsewhere." (*Id.* at 17.) Accordingly, even in the absence of the "at-will" language, the Court concludes that the Employment Handbook by its explicit terms cannot be interpreted to contain any limitation on CVS' ability to terminate its employees, and agrees with defendant's conclusion that "because Plaintiff is unable to demonstrate an express policy limiting CVS' right to terminate his employment, his breach of contract claim must fail." (Def. Mem. at 7); *accord Daniel*, 2009 WL 702209, at *13; *U.S. ex rel. Smith v. New York Presbyte-*

*rian Hosp.*, No. 06 Civ. 4056(NRB), 2007 WL 2142312, at *16 (S.D.N.Y. July 18, 2007); *Junk*, 2007 WL 4292034, at *5.

Accordingly, even assuming the facts alleged by plaintiff to be true for the purposes of this motion, his claims for breach of contract, based on CVS' internal policies as set forth in the Employment Handbook, must be dismissed for failure to state a claim upon which relief may be granted.

### V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), is granted. The Clerk of the Court shall close the case.

SO ORDERED.